IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Harold Chestnut, | ) | Civil Action No.: 4:11-cv-02160-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| American General Life Insurance Company, | ) | |
| f/k/a The Old Line Life Insurance Company | ) | |
| of America, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Harold Chestnut ("Plaintiff") filed this lawsuit against Defendant American General Life Insurance Company ("Defendant")[1] alleging several causes of action stemming from Defendant's handling of Plaintiff's life insurance policy. This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. # 28]. For the reasons discussed below, Defendant's Motion is denied.[2]

**Undisputed Facts**

Sometime in 1999, Plaintiff approached Bill Gause, an insurance agent,[3] seeking to obtain

---

[1] Plaintiff's initial dealings were with The Old Line Life Insurance Company of America. [*See* Def.'s Mot., Doc. # 28-1, at 3 n.1.] However, in 2003, American General Life Insurance Company acquired the company. [*Id.*]

[2] Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." The issues have been briefed by the parties, and the Court believes a hearing is not necessary.

[3] It appears from the record that Mr. Gause operated his own insurance agency. [Gause Aff., Doc. # 30-1, at ¶ 3.] However, the record is unclear whether Mr. Gause had a licensing agreement with Defendant. Generally, a broker is an agent of the insured, and not the insurer, unless the broker has a license with the insurance company. *See CRC Scrap Metal Recycling, LLC v. Hartford Cas. Ins. Co.*, No. 7:12–146, 2012 WL 4903661, at *8 n.6 (citing *Holmes v. McKay*, 334 S.C. 433, at 441–42, 513 S.E.2d 851, 855–56 (Ct. App. 1999)). Even assuming

life insurance. [*See* Ins. Quote, Doc. # 30-2.] Plaintiff received a quote for a twenty-year, level-term guaranteed life insurance policy. [*Id*.] On January 14, 2000, Plaintiff completed an application for the life insurance policy. [*See* Ins. Application, Doc. # 28-2.] On the application, Plaintiff specifically applied for a $250,000 life insurance policy with a "LTG 20 year level term." [*Id*. at 2.] Both Plaintiff and Mr. Gause signed the application, which was submitted to Defendant along with the required payment of $1,352.25 for the first year's premium. [*See id*.; Initial Payment, Doc. # 28-3, at 2.] The application also provided that if there were any amendments or corrections to be made concerning the policy as set forth in the application, it would be noted in the "Amendments and Corrections" section of the application, and that any change would require the "written consent of the person or persons who sign the application." [*See* Ins. Application, Doc. # 28-2, at 2.] The amendments and corrections section, which noted it was for "Home Office use only," did not contain any mention of amendments or corrections to be made to the policy. [*Id*.]

In a letter dated February 16, 2000, Defendant sent Plaintiff certain policy information. [*See* Policy Ltr., Doc. # 30-4.] In this letter, under the heading "IMPORTANT INFORMATION REGARDING POLICY," Defendant listed the policy number, Plaintiff's name, billing frequency and type, and the policy date. [*Id*.] The letter did not indicate the term of the issued policy. [*Id*.] The letter did list the premium as $1,012.50, and noted that Plaintiff had remitted $1,352.25. [*Id*.] Defendant credited Plaintiff the difference. [*See* Def.'s Mot., Doc. # 28-1, at 3.]

Defendant claims that Plaintiff's age made him ineligible for a twenty-year level premium,

---

that Mr. Gause was an agent of Plaintiff, and that his statements and actions were not binding on Defendant, the Court's disposition of the summary judgment motion is appropriate. If Mr. Gause was employed by, or had a license with, Defendant, his actions and admissions more strongly support this Court's resolution.

2

and it reduced his policy term to ten years, and reduced his premium to reflect this change. [Def.'s Mot. at 3.] However, Plaintiff indicates that he assumed the results of a physical examination, required by Defendant and finding him in good health, prompted Defendant to reduce his annual premium. [*See* Pl.'s Resp., Doc. # 30, at 3.] Moreover, Plaintiff claims that Defendant never delivered the policy, and Mr. Gause submitted a sworn affidavit indicating that neither he nor Plaintiff ever received the policy and that Defendant had no record that Plaintiff ever received the policy. [Gause Aff., Doc. # 30-1, at ¶ 18.]

It is undisputed that Plaintiff paid the required premium annually during the first ten years of the policy. [Def.'s Mot. at 3; Pl.'s Resp. at 3.] In 2010, after the ten years had passed, Defendant notified Plaintiff that he needed to pay a greater premium to retain his $250,000 life insurance policy. [Def.'s Mot. at 4.] Plaintiff lodged a complaint with Defendant, explaining that he applied for a twenty-year policy and was never told that anything other than a twenty-year policy had been issued. [*See* Complaint Ltr., Doc. # 30-5, at 2.] Defendant wrote Mr. Gause to inquire about Plaintiff's complaint, and explained that under company policy he should not contact Plaintiff until Defendant resolved the complaint. [*Id.*]

On June 24, 2010, Defendant wrote Plaintiff and informed him that because of he was ineligible for the twenty-year policy he applied for a decade prior, Defendant issued a ten-year policy. [*See* Options Ltr., Doc. # 28-6, at 2.] Defendant offered various options to Plaintiff, including a refund of his previously paid premiums or the ability to retain the policy for an additional ten years at a substantially higher premium. [*Id.* at 3–4.] In the letter, Defendant conceded that it had no record of informing Plaintiff that it had issued him a ten-year policy:

> Consumer Affairs is unable to locate any documentation or an amendment notifying you of the change in the term period. On behalf of the American General Life

    Insurance Company, I sincerely apologize for this unfortunate situation . . . .

[*Id*. at 2.]

    Plaintiff rejected Defendant's options and requested that the policy remain in force over the remaining ten years without alteration. [*See* Rejection Ltr., Doc. # 30-12, at 2.] Because Plaintiff would not agree to pay an increased premium, Defendant cancelled the policy via a January 5, 2011, notice of termination.[4] [Def.'s Mot. at 4; Notice of Termination, Doc. # 30-14, at 2.] Plaintiff filed this lawsuit on July 18, 2011, alleging causes of action for breach of contract, breach of contract accompanied by a fraudulent act, bad faith, and negligent misrepresentation.

## **Standard of Review**

    Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). Summary judgment is not "a disfavored procedural shortcut;" rather, it is an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Id*. Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)).

---

[4] The record indicates that in 2010, during the initial dispute between Plaintiff and Defendant, Plaintiff mailed two checks to Defendant representing his annual premiums for 2010 and 2011. [*See* Pl.'s Resp. at 4–5; Def.'s Reply, Doc. # 36, at 6.] Defendant ultimately attempted to refund these payments, though Plaintiff claims he has never cashed Defendant's refund checks. [*Id*.]

If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id*. at 257. In determining whether a genuine issue has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

The existence of *a mere scintilla* of evidence in support of the non-movant's position is insufficient to withstand a summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'n Satellite Corp*., 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

**Discussion**

Summary judgment is denied as to each ground raised by Defendant.

**I.     Breach of contract**

There is a genuine dispute of fact as to whether the parties entered into a contract for a twenty-year life insurance policy with guaranteed level premiums.

Under South Carolina law, the general rules of contract construction apply to a life insurance policy. *Walde v. Ass'n Ins. Co.*, No. 5061, -- S.E.2d --, 2012 WL 6177947, at *3 (S.C. Ct. App. Dec. 12, 2012) (quoting *M & M Corp. of S.C. v. Auto–Owners Ins. Co.*, 390 S.C. 255, 259, 701 S.E.2d 33, 35 (2010)). "The required elements of a contract are an offer, acceptance, and valuable consideration." *Ellsworth v. Infor Global Solutions (Mich.), Inc.*, No. 6:12–2867, 2012 WL 6641648, at *2 (Dec. 20, 2012) (citing *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 405, 581 S.E.2d 161, 166 (2003)).

A life insurance "application is merely an offer; no contract arises until the offer is accepted and all conditions precedent are met." *Allstate Ins. Co. v. Estate of Hancock*, 345 S.C. 81, 85, 545 S.E.2d 845, 847 (Ct. App. 2001) (citing *Rickborn v. Liberty Life Ins. Co.*, 321 S.C. 291, 303, 468 S.E.2d 292, 299 (1996)). However, valuable consideration evidencing acceptance for a contract "may consist of some forbearance given or detriment suffered." *Boyd v. Liberty Life Ins. Co.*, 399 S.C. 401, 407, 732 S.E.2d 180, 183 (Ct. App. 2012) (quoting *Rickborn*, 321 S.C. at 304, 468 S.E.2d at 300). This includes payment given in consideration of a contract of insurance. *Id.* (holding that "[l]aypersons" who remit payment justifiably assume they will receive immediate protection).

Further, " '[w]here language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured

will be adopted.' " *Integon General Ins. Co. v. Bartkowiak*, No. 7:09–cv–03045, 2010 WL 4156471, at *3 (D.S.C. Oct. 19, 2010) (quoting *Edens v.S.C. Farm Bureau Mutual Ins. Co.*, 279 S.C. 377, 379, 308 S.E.2d 670, 671 (1983)).

The record in this case could lead a rational trier of fact to find that Plaintiff and Defendant entered into a twenty-year life insurance contract providing a $250,000 benefit in exchange for a level premium paid in annual installments of $1,012.50.

Plaintiff plainly applied for a twenty-year, level-term guaranteed life insurance policy. While Defendant is correct that a life insurance application, standing alone, does not evidence a written contract, the application is not the only evidence of a contract in this case. In response to Plaintiff's application and payment of $1,352.25, Defendant sent a written document discussing "IMPORTANT INFORMATION REGARDING POLICY." [Policy Ltr., Doc. # 30-4, at 2.] Under this heading, Defendant listed various key information about the policy, including the policy number, the effective date, and a reduced annual premium amount. [*Id.*] Although Defendant's letter did not explain the reasons for the reduction in premium,[5] Plaintiff claims he believed the reduction

---

[5] Defendant claims that the premium reduction in 2000 put Plaintiff on "inquiry notice" as a matter of law that Defendant did not issue and deliver to him a policy with a twenty-year level premium. [Def.'s Mot. at 13.] Given this notice, Defendant also argues that the statute of limitations bars all of Plaintiff's claims. [*Id.* at 2, 13.] This argument fails. The letter sent to Plaintiff in response to his application referenced the premium change under the "IMPORTANT INFORMATION" heading, but it said nothing about a change in the length of the policy or why the premium was being reduced. [Policy Ltr., Doc. # 30-4, at 2.] Plaintiff claims he believed a reduction was a result of his good health noted in the intervening physical exam. [Pl.'s Resp. at 3.] Moreover, Mr. Gause claims Defendant never sent Plaintiff the supposed ten-year policy actually issued. [Gause Aff., Doc. # 30-1, at ¶ 18.] Defendant itself agreed that it had no record it ever informed Plaintiff of the change in the term period. [Options Ltr., Doc. # 28-6, at 2.] This Court cannot say as a *matter of law*, particularly when coupled with Defendant's admitted failure to inform Plaintiff about the change in policy duration, that based upon the premium reduction Plaintiff "reasonably ought to have . . . discovered" that Defendant had issued him a policy with a less than twenty-year term. *See*

7

was a result of an intervening physical exam which found him, according to Mr. Gause, in "excellent health." [Pl.'s Resp. at 3; Gause Aff., Doc. # 30-1, at ¶ 12.] Defendant's letter said nothing about the requested twenty-year policy becoming a ten-year policy, nor did Defendant do so under the heading titled "SPECIAL INSTRUCTIONS." [*Id*.] On the application itself, there was no reference to a change in the term of the policy in the "Amendments and Corrections" section[6] of the application. [*See* Ins. Application, Doc. # 28-2, at 2.] Viewing the evidence in a light most favorable to Plaintiff, a reasonable juror could find that Defendant's letter constituted acceptance of Plaintiff's application requesting a twenty-year, level-term guaranteed life insurance policy, albeit for a lower

---

*Dean v. Ruscon Corp.*, 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996) (explaining that under South Carolina's discovery rule, the statute of limitations begins to run "when a cause of action reasonably ought to have been discovered").

Defendant also points to a printout it claims Mr. Gause provided to Plaintiff during the application process in order to argue that Plaintiff should have known from the reduction in his premium amount that the term of the policy had changed. [*See* Def.'s Reply at 4; Printout, Doc. # 36-2.] This is also unavailing. There is no evidence that Plaintiff read the printout or that the printout was explained to him. Even assuming Plaintiff examined the printout, it merely explains how the annual premium of $1,352.25, the amount Plaintiff initially paid, was calculated. [*See* Printout, Doc. # 36-2, at 2.] It does not state that a premium of less than $1,352.25 was never available. The printout also fails to note that a person of Plaintiff's age would be ineligible for a twenty-year policy, and fails to reference the premium required for the ten-year policy Defendant claims it issued to Plaintiff. Again, at best this printout creates a jury question as to whether Plaintiff should have known that he had been issued a ten-year policy when his premium was later reduced without explanation.

[6] Defendant argues that reliance on the "Amendments and Corrections" is misplaced because it addresses Plaintiff's acceptance of the policy, not the acceptance of the application by Defendant. [Def.'s Reply at 5.] However, the language of the provision is arguably ambiguous, which requires the Court construe the provision in Plaintiff's favor. *See Integon General Ins. Co.*, 2010 WL 4156471 at *3. Even if this Court adopts Defendant's construction, the absence of any notation in this section further bolsters Plaintiff argument that he was never informed that his policy would be for only ten years.

8

premium.[7]

Moreover, Defendant accepted Plaintiff's payments over the course of ten years, while it failed to send "any documentation or an amendment notifying [Plaintiff] of the change in the term period." [Options Ltr., Doc. # 28-6, at 2.] The South Carolina Supreme Court has explained that where an insurance company accepts payment and processes a check, "[c]ircumstances may imply acceptance of an offer to purchase insurance." *Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 358, 415 S.E.2d 393, 396 (1992).[8] The insurance agent who actually procured Plaintiff's policy, by way of his sworn affidavit, further states that it was his understanding that Defendant "had a contract with [Plaintiff] and that they were obligated to accept his premiums for 20 years . . . ." [Gause Aff., Doc. # 30-1, at ¶ 20.] Therefore, Plaintiff's payments, given Defendant's acceptance

---

[7] Under South Carolina common law, no contract is formed if the acceptance varies the terms of the offer. *Weisz Graphics Div. of Fred B. Johnson Co., Inc. v. Peck Industries, Inc*., 304 S.C. 101, 106, 403 S.E.2d 146, 149 (Ct. App. 1991) (citing *Sossamon v. Littlejohn*, 241 S.C. 478, 485, 129 S.E.2d 124, 127 (1963)). "Instead, an acceptance which adds different or additional terms is treated as a counteroffer, which may be accepted or rejected by the other party." *Id*. Even if the letter is viewed as constituting a counteroffer from Defendant for a twenty-year level premium life insurance policy at $1,012.50 annually, a reasonable juror could find that Plaintiff accepted such a counteroffer by paying that premium amount over the next decade.

[8] Defendant also makes an argument that any purported contract for a twenty-year policy fails to comport with the statute of frauds because it requires performance that goes beyond one year. However, it is undisputed that the application itself was in writing and signed by Plaintiff and Mr. Gause, the insurance agent. [*See* Ins. Application, Doc. # 28-2, at 3.] Additionally, as this Court has explained, a jury question exists as to whether that application was accepted by either writing or by payment. Clearly, if the application was accepted in writing, the statute of frauds would be satisfied. *See* S.C. Code Ann. § 32-3-10(5). Further, by Plaintiff making payment and Defendant accepting payment, a reasonable juror could find that both parties fully performed on a twenty-year policy up until the alleged breach. "[C]omplete performance . . . takes [any] oral contract out of the statute of frauds and makes [a] promise enforceable in spite of the fact that it could not be performed . . . within a year." *Ellsworth*, 2012 WL 6641648, at *3 n.1 (quoting *Coker v. Richtex Corp*., 261 S.C. 402, 406, 200 S.E.2d 231, 232 (1973)).

9

of those payments and failure to inform Plaintiff of any amendment to the requested twenty-year term, create a jury question as to whether the parties entered into a contract with a twenty-year level premium for an annual payment of $1,012.50. If a reasonable juror could find such a contract between the parties, it logically follows that a genuine dispute of fact exists as to whether Defendant's cancellation of the policy after only ten years constituted a breach.

## II.     Breach of contract accompanied by a fraudulent act

There is a further dispute of fact as to whether Defendant committed a breach of contract accompanied by a fraudulent act.

" ' In order to recover for breach of contract accompanied by a fraudulent act, a plaintiff must establish: (1) a breach of contract;[9] (2) that the breach was accomplished with a fraudulent intention, and (3) that the breach was accompanied by a fraudulent act.' " *McClurkin v. Champion Labs., Inc*., No. 0:11–cv–02401, 2011 WL 5402970, at *5 (D.S.C. Nov. 18, 2011) (quoting *Minter v. GOCT, Inc*., 322 S.C. 525, 529–30, 473 S.E.2d 67, 70 (Ct. App. 1996)). " 'In an action for breach of contract accompanied by a fraudulent act, the fraudulent act element is met by any act characterized by dishonesty in fact, unfair dealing, or the unlawful appropriation of another's property by design.' " *Id*. (quoting *Perry v. Green*, 313 S.C. 250, 254, 437 S.E.2d 150, 152 (Ct. App. 1993)).

As previously discussed, Plaintiff made all required payments over the first ten years and a

---

[9]  Because this Court finds that a question of fact exists regarding whether there was a contract for a twenty-year life insurance policy in this case, the Court assumes for purposes of summary judgment on the remaining claims that such a contract existed and was breached. *See Diebold, Inc*., 369 U.S. at 655 (explaining that a court must construe all reasonable inferences in favor of the non-moving party). As discussed in Section V, there is also a genuine dispute of fact as to whether, and to what extent, Plaintiff sustained damages as a result of Defendant's actions.

reasonable juror could find that the parties entered into a twenty-year life insurance contract with an annual level premium of $1,012.50. In a letter offering Plaintiff the option of an interest-free refund or a continuation of the policy at higher premiums, Defendant itself admitted that it had no record of informing Plaintiff that although he applied for a twenty-year policy, it had issued him a ten-year policy. [*See* Options Ltr., Doc. # 28-6, at 2.] Further, the "Amendments and Corrections" section of the insurance application contained no reference to a change in the term of the policy. [*See* Ins. Application, Doc. # 28-2, at 2.]

Additionally, Plaintiff wrote Defendant prior to cancellation to explain that his contract was for a twenty-year, level premium, life insurance policy. [*See* Rejection Ltr., Doc. # 30-12, at 2.] Moreover, Mr. Gause, the agent who procured the policy, has sworn under oath that neither he nor Plaintiff were ever told about the change in the term of the policy, that he was "shocked" to hear that Defendant was attempting to charge Plaintiff substantially more for coverage, and that he personally informed Defendant's consumer affairs department, prior to cancellation of Plaintiff's policy or any increase in his premium, that Defendant "had a contract" with Plaintiff "for 20 years." [*See* Gause Aff., Doc. # 30-1, at ¶¶ 14, 16, 20.] Mr. Gause also states that in his twenty-six years of experience as an insurance agent he has "never seen an insurance company attempt to change the terms of the policy after the fact and after accepting premiums such as [Defendant] did in this case." [*Id*. at ¶ 23.]

In light of this record, a rational juror could find that Defendant, halfway through a twenty-year, level-term guaranteed life insurance policy for which all payments had been made, unilaterally raised Plaintiff's premium after demanding Plaintiff either pay significantly more for his insurance or accept an interest-free refund of prior payments. These actions could constitute fraudulent acts, as they evidence " 'dishonesty in fact [and] unfair dealing . . . .' " *McClurkin*, 2011 WL 5402970

at *5 (quoting *Perry*, 313 S.C. at 254, 437 S.E.2d at 152). Given Defendant's admissions and the protestations of the insurance agent, a rational juror could also find that when Defendant cancelled Plaintiff's policy after ten years, it did so knowing that the parties had agreed to a twenty-year policy. There is at least a genuine dispute of fact as to whether Defendant committed a breach of contract accompanied by a fraudulent act.

### III.     Bad faith

Summary judgment is also inappropriate regarding Plaintiff's claim for bad faith.

As this Court has recently explained, under South Carolina law, the elements of an action for bad faith *typically* include: " '(1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing[10] arising on the contract; (4) causing damage to the insured.' " *CRC Scrap Metal Recycling, LLC v. Hartford Cas. Ins. Co.*, No. 7:12–146, 2012 WL 4903661, at *7 (D.S.C. Oct. 15, 2012) (quoting *Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 359–60, 415 S.E.2d 393, 396–97 (1992)).

---

[10] It is true, as Defendant notes, that the South Carolina Court of Appeals has ruled that there is no independent cause of action for the breach of the implied covenant of good faith and fair dealing. *RoTec Servs., Inc. v. Encompass Servs., Inc.*, 359 S.C. 467, 471–763597 S.E.2d 881, 883–84 (Ct. App. 2004). Plaintiff's cause of action, though, is one for bad faith, which involves "unreasonable action" in breaching the implied covenant of good faith and fair dealing. *See CRC Scrap Metal Recycling, LLC*, 2012 WL 4903661 at *7 (quoting *Crossley*, 307 S.C. at 359–60, 415 S.E.2d at 396–97). As discussed herein, there is a genuine dispute of fact as to whether Defendant breached its contract with Plaintiff, and, by extension, its implied covenant of good faith and fair dealing. However, the Court is denying summary judgment as to Plaintiff's bad faith claim because, in viewing all reasonable facts and inferences in Plaintiff's favor and assuming such a breach, there is also a genuine dispute of fact as to whether Defendant acted unreasonably in doing so.

As Defendant notes, because Plaintiff is not deceased there has been no claim for benefits and no denial under the policy. However, South Carolina law indicates that a company's termination of an otherwise valid insurance contract may support a bad faith cause of action. Under South Carolina law, an insured may recover damages at law for the wrongful cancellation of an insurance policy. *Glover v. North Carolina Mut. Life Ins. Co.*, 295 S.C. 251, 255, 368 S.E.2d 68, 71 (Ct. App. 1988) (quoting *McLaughlin v. Brotherhood of Railroad Trainmen*, 216 S.C. 233, 240, 57 S.E.2d 411, 414 (1950)). Further, claims brought in South Carolina and under South Carolina law alleging wrongful cancellation of an insurance policy have been brought as bad faith claims. *See, e.g.*, *Mungo v. CUNA Mut. Ins. Soc.*, No. 0:11–464, 2012 WL 3704924, at *2 (D.S.C. Aug. 24, 2012) (applying South Carolina law and denying a Defendant's motion to strike class action allegations in a case where Plaintiff alleged a cause of action for bad faith in terminating an insurance policy and replacing that insurance policy with a plan of lesser value); *Mitchell, Jr. v. Fortis Ins. Co.*, 385 S.C. 570, 596–97, 686 S.E.2d 176, 190 (2009) (affirming jury's finding on liability for bad faith claim premised upon wrongful rescission of an insurance policy); *Thompson v. Home Sec. Life Ins.*, 271 S.C. 54, 56, 244 S.E.2d 533, 534–45 (1978) (holding, in action for breach of contract accompanied by a fraudulent act, that trial judge's jury charge was appropriate when it implied that punitive damages were recoverable for a wanton or bad faith cancellation of the policy).

Thus, the crux in determining whether an insurer has committed bad faith in cancelling a life insurance policy is whether a rational juror could find that the insurance company had no reasonable ground for its action. *See Crossley*, 307 S.C. at 360, 415 S.E.2d at 397 (explaining that the central question in a bad faith case is whether "there is a reasonable ground" for the insurer's decision). As discussed more thoroughly above, there is a genuine dispute as to whether Defendant acted

13

wrongfully by demanding higher premiums and ultimately cancelling Plaintiff's policy with knowledge that its actions were in violation of its agreement with Plaintiff.[11] Certainly, this Court cannot say *as a matter of law* that Defendant's actions were reasonable and not in bad faith.

## IV.  Negligent misrepresentation

Plaintiff's negligent misrepresentation claim also survives summary judgment.

A claim for negligent misrepresentation requires a plaintiff to prove the following six elements:

> (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation.

*Ellsworth*, 2012 WL 6641648, at *6 (quoting *Quail Hill, LLC v. Cnty. of Richland*, 387 S.C. 223, 240, 692 S.E.2d 499, 508 (2010)). For an alleged misrepresentation "[t]o be actionable, 'the representation must relate to a present or pre-existing fact and be false when made.' Representations based on statements as to future events or unfulfilled promises are not usually actionable." *Sauner*, 354 S.C. at 408, 581 S.E.2d at 167 (quoting *Koontz v. Thomas*, 333 S.C. 702, 713, 511 S.E.2d 407, 413 (Ct. App. 1999)).

In its motion for summary judgment, Defendant focuses only upon the first element: whether Defendant made a false representation to Plaintiff. [Def.'s Mot. at 9.] Defendant argues that this

---

[11]  In his complaint, Plaintiff lists a number of actions that he claims amounted to bad faith on Defendant's part. [Compl., Doc. # 1-1, at ¶ 20.] However, each of these actions ultimately led to, or stemmed from, Defendant's alleged wrongful termination of the policy or Defendant's alleged improper attempt to inflate Plaintiff's premiums or otherwise alter the terms of the insurance contract.

14

claim is based on the promise of future performance, specifically that the alleged misrepresentation concerned amounts that "would be" due under the policy. [*Id.*] In his response, Plaintiff argues that the misrepresentation complained of is that "Defendant led Plaintiff into believing he had acquired and was paying for a 20-year level premium life insurance policy . . . ." [Pl.'s Resp. at 13.] Although this is a close call, the Court finds that there is more than a mere scintilla of evidence in the record to support Plaintiff's proposition. *See Anderson*, 477 U.S. at 252.

As this Court has discussed, in response to Plaintiff's application for a twenty-year, level-term guaranteed life insurance policy, Defendant sent a written document discussing "IMPORTANT INFORMATION REGARDING POLICY." [Policy Ltr., Doc. # 30-4, at 2.] The response, which listed the policy number, the effective date, and the annual premium amount, indicated that Defendant had accepted payment and said nothing about the requested twenty-year policy becoming a ten-year policy. [*Id.*] A reasonable finder of fact could determine that Defendant's response was a representation that, as the Response indicates, Plaintiff "had acquired and was paying for a 20-year level premium life insurance policy . . . ." [Pl.'s Resp. at 13.] This would be a false representation as Defendant claims it actually issued Plaintiff a ten-year policy. Summary judgment on Defendant's negligent misrepresentation claim is denied.

## V.     Damages

Defendant also attacks Plaintiff's demand for actual and punitive damages. To the extent the Court views these arguments as requests for summary judgment on other grounds, they are denied.

First, as to actual damages, Plaintiff offers two formulations: (1) the difference between the amount Defendant would charge him for continuing the life insurance policy another ten years and the amount Plaintiff would have paid during that same ten-year period under the original, now-

cancelled policy; and (2) the face value of the original, now-cancelled policy, reduced to present value. [*See* Pl.'s Ans. to Interrog. No. 4, Doc. # 28-8, at 4.] Without citing any legal authority, Defendant claims that Plaintiff's damages should be "[d]isallowed as a [m]atter of [l]aw." [Def.'s Mot. at 14.] South Carolina courts have long held that there is no "precise and inflexible rule for computation of actual damages for breach of a policy of life insurance . . . ." *Brown v. United Ins. Co.*, 236 S.C. 39, 48, 113 S.E.2d 26, 30 (1960); *see also Pack v. Metro. Life Ins. Co.*, 178 S.C. 272, 274, 182 S.E. 747, 749 (1935) (holding that the damages for breach of a life insurance policy is "to be ascertained, as for example, by ascertaining [a plaintiff's] life expectancy and the amount she would be required to pay for insurance of like character during such period"). This is in keeping with the Fourth Circuit's holding that, under Supreme Court precedent "a plaintiff's inability to prove damages with mathematical precision does not bar recovery. . . ." *Miller v. Asensio & Co., Inc*., 364 F.3d 223, 231 n.5 (4th Cir. 2004) (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 565, (1931)). The Fourth Circuit has explained that a plaintiff is allowed to present a "somewhat 'uncertain' damage calculations to the jury and insulates from vacatur the jury's 'estimate' based on such calculations." *Id*. In view of this authority, the Court cannot say that Plaintiff's damages formulations fail as a matter of law.

Second, Defendant attacks Plaintiff's demand for punitive damages by arguing that the facts do not demonstrate willful, wanton, or reckless disregard of Plaintiff's rights.. [Def.'s Mot. at 16.] This argument fails. As discussed at length by the Court, Plaintiff created a genuine dispute of material fact as to whether Defendant committed a breach of contract by fraudulent act, acted in bad faith, or negligently misrepresented information to Plaintiff. Each of these claims permit a jury to

16

assess punitive damages. *See* 11 S.C. Jur. Damages § 43 (2012).[12]

## Conclusion

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 28], is **DENIED.**

**IT IS FURTHER ORDERED** that the scheduling order in this case is modified as follows:

1. Motions in limine must be filed by **February 8, 2013**, and responses to those motions must be filed by **February 15, 2013**.

2. Attorneys shall meet no later than **February 18, 2013,** for the purpose of exchanging and marking all exhibits. *See* Local Civil Rule 26.07.

2. Parties shall furnish the Court pretrial briefs by **February 21, 2013**.

3. This case is subject to being called for jury selection and trial on or after **February 28, 2013**.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
January 28, 2013

---

[12] Plaintiff also makes a claim for attorneys' fees. [Pl.'s Resp. at 17.] Generally, attorneys' fees are not recoverable unless authorized by contract or statute. *Jackson v. Speed*, 326 S.C. 289, 307, 486 S.E.2d 750, 759 (1997); *Baron Data Sys., Inc. v. Loter*, 297 S.C. 382, 383, 377 S.E.2d 296, 297 (1989). In arguing for attorneys' fees, Plaintiff simply quotes portions of a single South Carolina Code provision, without including any argument. However, that provision appears to govern cases where an insurer refuses pay a claim that is made on an insurance policy within ninety days. *See* S.C. Code Ann. § 38-59-40. Thus, it appears that an award of attorneys's fees may be inapplicable to the case at bar. Nonetheless, because the applicability of attorneys' fees is not a question for the jury, the Court will reserve final ruling on this issue until trial. *See id*. ("The amount of reasonable attorneys' fees must be determined by the trial judge . . . ."). The Court therefore denies the Motion for Summary judgment on this ground *without prejudice* to Defendant's right to raise the issue again if necessary.